**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190226-U

Order filed September 21, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0226 Circuit No. 18-CF-1267 |
| | ) | |
| JEREMIAH I. CLAYTON, | ) ) | Honorable Carmen J. Goodman, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Justice Carter and Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The circuit court's credibility determination regarding the officers' testimony was not against the manifest weight of the evidence, and absent the officers' testimony there was no probable cause to stop defendant's vehicle.

¶ 2     The State appeals the Will County circuit court's grant of defendant's motion to suppress evidence. The State argues the court erred in finding that a pretextual stop occurred where the arresting officers testified consistently that they stopped defendant, Jeremiah I. Clayton, for not wearing a seat belt. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         The State charged defendant by indictment with unlawful possession of a firearm by a

street gang member (720 ILCS 5/24-1.8(a)(2), (b) (West 2016)) and aggravated unlawful use of a

weapon (*id.* § 24-1.6(a)(1), (3)(A-5), (d)(2)). Before trial, defendant filed a motion to suppress

evidence.

¶ 5         During a suppression hearing, Officer Kyle Killian of the Joliet Police Department

testified that on the evening in question, Killian was sitting in his parked police vehicle, together

with Officer Philip Emph, when Killian observed defendant's vehicle drive past. Defendant's

vehicle had tinted windows, but Killian testified that he could see defendant because the

windows were down. Killian testified that at that time he was familiar with defendant and his

vehicle because of a prior interaction with defendant. During this prior incident, a firearm was

recovered from the vehicle defendant occupied after a traffic stop. Killian testified that he

believed "something similar" could be happening when he observed defendant's vehicle.

¶ 6         According to Killian, defendant's sport utility vehicle (SUV) was elevated higher than

Killian's police vehicle, a four-door sedan. Killian testified that he observed defendant was not

wearing his seat belt. When asked if the seat belt was Killian's "excuse" to stop defendant,

Killian answered, "Correct."

¶ 7         After making this observation, Killian began following defendant's vehicle but did not

immediately activate his police vehicle's red and blue lights. Killian followed defendant for

approximately 20 to 30 seconds without sharing his reasoning for following defendant's vehicle

with Emph. After Killian stopped defendant's vehicle, he saw defendant make a motion or

gesture toward a front seat passenger in defendant's vehicle. In spite of defendant's tinted

windows, Killian stated that he could see this movement inside the vehicle. Based on these

2

observations, Killian conducted a search of defendant's vehicle and discovered a firearm. Emph's testimony was consistent with Killian's version of the events.

¶ 8    At the conclusion of the suppression hearing, the court found that the officers' testimony was not credible and did not establish probable cause to conduct a traffic stop and the subsequent search of defendant's vehicle. The court explained:

"But this is what got me. *** [The second officer] said [they] stopped [defendant] because he didn't have a seat belt, but they don't talk to each other. So do they have ESP? They didn't talk to each other. They didn't say hey, he doesn't have a seat belt, let's follow him. They just immediately started to follow him, which sounds more like a pretext."

The court also questioned the logistics of the officers' testimony, specifically their ability to see defendant's seat belt, citing defendant's vehicle's tinted windows, the dark color of both defendant's vehicle and the seat belt, and the height disparity between defendant's SUV and the officers' police vehicle. Based on these findings, the court granted defendant's motion to suppress evidence.

¶ 9    The State filed a certificate of substantial impairment and appeals.

¶ 10                                II. ANALYSIS

¶ 11    The State argues that the court erred by finding that the officers were not credible witnesses, insisting that Killian and Emph testified credibly that they justifiably stopped defendant for failing to wear a seat belt. The State requests that this court reverse the trial court's decision granting defendant's motion to suppress the evidence seized following the traffic stop.

¶ 12    We apply a two-part standard when reviewing a circuit court's ruling on a motion to suppress evidence. First, a court's factual finding will be examined to determine if the findings

3

were contrary to the manifest weight of the evidence. Next, we review *de novo* the ultimate legal ruling regarding whether suppression is warranted. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). The circuit court is best situated to make witness credibility determinations. *Id.* A reviewing court will not replace the circuit court's credibility determination with its own. *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 13        The trial court was in a superior position to observe each officer's demeanor during their sworn testimony. Primarily, the court was troubled by inconsistencies inherent in the officers' version of the events. Specifically, the court noted that Emph testified that the reason for the traffic stop by Killian arose from the observation that defendant was not wearing a seat belt. However, the record shows the court recalled and focused on the testimony that the officers had not discussed the reason for the traffic stop before it occurred. The record reveals the trial court's recollection of this testimony was accurate. Ultimately, based in part on this testimony, the court found that the officers' testimony was not credible regarding their ability to observe defendant was not wearing a seat belt before the traffic stop. The trial court's findings of fact supporting its credibility determination, such as the dark color of both defendant's vehicle and defendant's seat belt, the height disparity between defendant's SUV and the officers' vantage point while seated in this particular police vehicle, and the officers' agreement regarding the lack of any discussion prior to the traffic stop, are not contrary to the manifest weight of the evidence. Since the court's credibility findings were not contrary to the manifest weight of the evidence, we must defer to these findings on appeal. Therefore, the trial court's decision to grant defendant's motion to suppress is affirmed.

¶ 14                                    III. CONCLUSION

¶ 15          The judgment of the circuit court of Will County is affirmed.

¶ 16          Affirmed.